**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LISBETH GONZALEZ CAMACHO | CIVIL NO. 12-1607 (FAB) |
| *Plaintiff* | |
| v. | |
| HEWLETT PACKARD, PAUL T. HARGEN, DAVID TRABAL, RICK GOODWIN | |
| *Defendants* | |

**JOINT CASE MANAGEMENT MEMORANDUM**

TO THE HONORABLE COURT:

Pursuant to this Court's Case Management Order dated October 3, 2012, and Rule 26(f) of the Federal Rules of Civil Procedure, the parties have conducted a meeting to discuss, draft and hereby file this Joint Case Management Memorandum.

**I.   COUNSEL FOR THE PARTIES**

Plaintiff is represented by Juan R. Gonzalez Muñoz, Esq., P.O. Box 9024055, San Juan, Puerto Rico 00902-4055, telephone 787-766-5052, facsimile 787-766-5551 and e-mail addresses polonorteprlaw@gmail.com and jrgmlaw@gmail.com; and, Carlos M. Vergne Vargas, Esq., 24 Mariana Bracetti St., 2nd Floor, San Juan, Puerto Rico 00918, telephone 787-753-3799, facsimile 787-759-8429 and e-mail address carlosvergne@aol.com.

Defendants[1] are represented by Fernando A. Baerga-Ibañez, Esq. and Carlos R.

---

[1] Defendant Rick Goodwin appears without submitting to this Court's jurisdiction for lack of *in personam* jurisdiction.

Ramírez, Esq., 416 Ponce de Leon Ave., Union Plaza Bldg. Suite 810, San Juan, Puerto Rico, 00926.  Telephone (787) 753-7455, fax (787) 756-5796, and e-mail addresses fbaerga@bqlawoffices.com and cramirez@bqlawoffices.com, respectively.

## II.   FACTUAL CONTENTIONS

### Plaintiff

González graduated as an Industrial Engineer from the Colegio de Agricultura and Artes Mecánicas in 1984.  She is 51 years of age, and she commenced working as a Systems Administrator at Hewlett-Packard (hereafter referred to as "HP") on July 3, 1984.  She is the oldest and most senior member of HP's Inkjet Supplies Business ("ISB").   During her twenty-eight (28) years of employment with HP, González has performed her job responsibilities to her employer's satisfaction.  González has met HP's expectations and goals, and has been routinely commended for her work.  During her tenure, González has been promoted to several positions as a result of her satisfactory performance, including Quality Manager; Product Engineering II and Manager Engineering.  She currently works as Chief of Staff.

As part of the evaluation and supervision process at HP, González would meet with her immediate supervisor and set the objectives for the upcoming year.  These objectives were documented at the beginning of the year and were reviewed during mid- and end-of-year performance evaluation sessions held between the supervisor and the supervised subordinate.   At the conclusion of the end-of-year evaluation, the supervisor would assess the employee's performance and assign a grade based on the applicable criteria and an overall score for the employee's performance during that year. Co-defendant Paul T. Hargen (hereafter referred to as "Hargen") became González's

immediate supervisor in 2008. During 2008, 2009 and 2010, González met HP's expectations and Hargen assigned a grade of "P" to González's work.  "P" stands for "Achieves Expectations" in HP's performance grading scale.

Effective on November 9, 2010, as part of a reorganization within HP, González accepted Hargen's grade adjustment from Manager Engineering IV (Grade M29) to Business Strategy Manager III (Grade M28).  Hargen made a verbal guarantee to González that this grade adjustment did not include a pay cut of her yearly salary. Neither Hargen nor HP Human Resources Director David Trabal (hereafter referred to as "Trabal") ever informed González that this grade adjustment would constitute a demotion.  This grade adjustment was predicated on the reduction of HP's workforce resulting from the reorganization of HP's worldwide operations.  Shortly after González accepted the grade adjustment, HP raised González's yearly salary to $142,213.67. However, to González's surprise, her grade adjustment was reflected in the system as a demotion.  At that time, González did not feel threatened because her compensation was not adversely affected and, in her new assignment as Business Strategy Manager III, González continued to perform identical duties to the ones she performed prior to the grade adjustment.

Contemporaneously with the salary increase of February 1, 2011 and pursuant to HP's policy, González and Hargen met and established González' objectives for the year 2011.  During the 2011 mid-year review, Hargen did not inform González of any deficiencies in her performance or of any tendency pointing towards a failure to meet the established goals for 2011. Pursuant to the established policy at HP, if González were failing to achieve any of the established objectives or exhibiting any opportunity for

improvement by the mid-year review, it would have been required from Hargen to document any such "opportunity" as well as the corresponding measures to improve González's performance.  During the second half of 2011, Hargen and HP commenced to exhibit an age discriminatory animus towards González.  During a conversation that González held with Mercedes Hernández (hereafter referred to as "Hernández"), who is another member of Hargen's immediate staff, Hernández shared with González her perception that Hargen did not respect González and, hence, no one on the team respected González.  Hernández suggested to González that she apply for other positions within HP so she could complete the short period left for González to be eligible for retirement.

Notwithstanding González's satisfactory completion of the established goals for 2011, on

December 16, 2011, Hargen corroborated Hernández's perception when he told González that he had a lack of trust in her capability to perform.  Hargen began to criticize González for her alleged failure to achieve objectives which had not been established between the two of them at the beginning of the year as required by HP's policies.  González also began to be sidelined and bypassed by Hargen in some of her duties as Chief of Staff.  These included restrained access to information ordinarily accessible to González, deprivation of some of her duties, as well as the unilateral delegation by Hargen of responsibilities routinely performed by González to substantially younger employees within ISP.  González began to realize that Hargen was using subterfuges in order to get rid of her and let her substantially younger peers assume González's responsibilities.

Hargen's discriminatory campaign against González came to fruition when he gave a negative classification to González as part of the end-of-the-year evaluation process for 2011.  Hargen assigned a Partially Achieves Expectations ("PA") rating to González.  Despite HP's clear policy that performance ratings need to be justified by the supervisors, Hargen has failed to document any reason for his negative evaluation of González.   As of this filing, a second evaluation cycle has arrived and González remains in "limbo" because Hargen has failed to evaluate her performance.   This notwithstanding the fact that González achieved 100% of her objectives as set by her and Hargen at the beginning of 2011.

At HP, an employee with a "PA" rating is substantially, if not totally, deprived of the opportunities to be considered for other business areas of HP in which alternatives for other employment may be available.  A "PA" classification may serve as justification for a termination of employment at the end of the following if no improvement has been exhibited.  Hargen's failure to identify and document any area in which he could later predicate any adverse job action against González has deprived her of the opportunity to effectively challenge his basis for the "PA" rating.

On December 26, 2011, González sent an e-mail to Hargen in which she warned him that none of his complaints about her performance (all of which related to the "business side" of HP operations), were predicated on her failure to meet the established objectives that she had to fulfill.  González demanded that her "PA" rating be modified to reflect an accurate evaluation of her performance vis-à-vis the established goals that González was supposed to achieve in 2011.  González reminded Hargen that, when she had requested that he provide opportunities for her to

5

demonstrate that she could perform in the "business side" of the job, he had refused to provide any such opportunities.   This was a "trap" to sidestep the objective policy established at HP to evaluate its personnel.

González also informed Hargen that she had sought legal advice and would not hesitate to file an age discrimination charge at the Anti Discrimination Unit ("ADU") or the Equal Employment Opportunity Commission ("EEOC") if her demands for equal treatment pursuant to HP's policies were not addressed by him.   Almost one year later, Hargen has not provided any justification for González's "PA" rating despite her repeated requests for said justification.   Finally, she expressed her expectation that no retaliation ensue as a result of her demands for fair and age-discrimination-free treatment.

Upon her return to work in January of 2012, González experience hostility from Hargen.   González has continued to press HP for Hargen's justifications for the PA rating.   González's efforts through Trabal, have proven equally fruitless.   Upon González's request to Trabal, he limited himself to expressing that he had investigated her age discrimination allegations and that they were meritless.   Trabal informed González that he would proceed to conclude and document the investigation whenever Hargen provides his justification for the PA rating.   HP has not concluded nor documented the investigation for González's review.   Trabal expressed that there was no discriminatory treatment because Hargen had not provided his comments in the evaluations of any of the employees under Hargen's supervision.   Hargen has yet to respond to González's December 26, 2011 e-mail and her subsequent remarks. Hargen's treatment against González is different than his treatment of her substantially

younger peers and is discriminatory because of age because these were given salary increases based on positive evaluations while she did not receive any due to Hargen's discriminatory and unjustified "PA" rating of González.

The difference in treatment and HP's discriminatory animus against González have already resulted in adverse consequences in reduced increases in compensation and to González's mobility within HP because of the PA rating.  At HP, an employee with a "PA" rating will not be considered for opportunities in other areas within the company, unless a Manager specifically requests a particular human resource.  In times of workforce reductions, any opportunity for a transfer is virtually erased because of the "PA" rating.  Notwithstanding said policy, when González reminded Trabal of it, he denied its existence and suggested that she apply for any position for which she understood to be qualified.  In order to search for alternatives within HP in which González would not be forced to work in a discriminatory setting, on February 27, 2012 González applied for various available positions in her M28 level.  However, she was not even contacted for five (5) of the six (6) positions to which she applied.  As for the application that *did* get a response, González was called for an informal interview for the position; however, the interview was canceled because the position allegedly "disappeared in the system" and was no longer available.

HP has retaliated in other instances after González complained of discrimination to Hargen, Trabal and Hargen's immediate supervisor and defendant, Rick Goodwin (hereafter referred to as "Goodwin").

On January 10, 2012, when González returned to work after having complained of discrimination, her access to the internet had been blocked, while the other

employees nearby continued with internet service.  When she discussed this matter with Trabal, as well as her allegations of discriminatory treatment, he suggested that González accept a demotion to a M27 level position, with its corresponding cut in compensation.  Furthermore, Hargen has led other members of his direct reports to believe that he does not trust González.  Since González' lodging of her internal complaint to Hargen, Trabal and Goodwin, she has been deprived of quintessential duties of her position as Chief of Staff in ISP.  González has also been the target of unjustified disciplinary memoranda from Hargen.

As part of her responsibilities, González has always been part of the team which deals with reductions in force and reorganizations within ISP.  In early 2012, two operators and one buyer positions were eliminated from HP's ISP Division, and Hargen openly excluded González from participation in the process of eliminating those positions, and he restricted González's access to information to which she has always been privy.

On March 14, 2012, González filed a charge of employment discrimination and retaliation on the basis of age with the Puerto Rico Department of Labor's Anti-Discrimination Unit.  Additionally, a second administrative charge of retaliation was filed on April 30, 2012.

Although mid-year employee evaluations at HP were due to be held during the summer of 2012, Hargen continually gave excuses not to meet with González to discuss her 2012 performance.  For instance, on June 12, 2012 González reminded Hargen of their scheduled June 14, 2012 mid-year performance evaluation session and she also expressed her concern that he had not provided the completed 2011 written

performance evaluation, reiterating her request for the PA rating justifications, which were still pending.  In complete disregard of HP's policy and corporate culture, Hargen did not meet with González for her 2012 mid-year evaluation.

Defendants are liable to González for all of the damages proximately resulting from such unlawful conduct.  Hargen continues to discipline González without any justification, except for his discriminatory and retaliatory animus against González. Defendants' actions represent a callous or reckless disregard for González' federally protected rights and, as such, constitute a willful violation of the ADEA.  As a result of said conduct, González is entitled to liquidated damages in an amount equal to the backpay resulting from the discriminatory and retaliatory deprivation of approximately 12 points of her full bonus performance for 2011 due to Hargen's unlawful "PA" rating.  The quality of González's everyday life has been altered as a result of her depression, anxiety and vulnerability which have required that González submit to medical treatment. This deterioration in the quality of González' life is a proximate result of the discriminatory and retaliatory treatment alleged herein and for which defendants are liable under local law.  Defendants are liable for double the amount of all damages proximately caused to González pursuant to Laws Nos. 100 and 115.

**Defendants**

Plaintiff filed this case alleging age discrimination and retaliation under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*; Puerto Rico Law No. 100, 29 Laws P.R. Ann. § 146 *et seq.*; and Puerto Rico Law No. 115, 29 Laws P.R. Ann. § 194 *et seq.*

Plaintiff essentially alleges that (1) she was demoted in November 2010; (2) she

was not satisfied with the performance evaluation ratings awarded by Hargen, her immediate supervisor; and (3) that she was retaliated against for lodging an internal age discrimination complaint on December 26, 2011 and two additional administrative complaints filed in March and April 2012, before Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human Resources.

Plaintiff's allegations are based on unsupported conjectures and the mischaracterization of certain events.   To begin with, Plaintiff was not demoted in November 2010.   The personnel transaction made at that time was simply a reclassification that had no adverse consequence upon her.   She remained performing the same duties she performed before her reclassification, continued reporting to the same immediate supervisor, did not lose any compensation or fringe benefit and continued to have the same level of authority within the company.   Furthermore, the reclassification was part of a worldwide restructuring process that was not in any manner related to Plaintiff's age.   Moreover, at the time Plaintiff expressed no objection to her reclassification.   Claiming discrimination based on that event is untimely, as it is time barred.

Plaintiff's discrimination claim based on her performance evaluation rating equally lacks merit.   During the December 16, 2011, meeting between Plaintiff and Hargen, the latter explained in detail the criteria he used to evaluate her performance and the reasons for his determination to assign her a PA grading.   None of the criteria used by Hargen were based on the age of his employees.   The evaluation process was the same used by Hargen with all other employees under his immediate supervision. Other employees within Plaintiff's age range were also evaluated by Hargen and none

claimed being discriminated because of their age.  In fact, Hargen evaluated older employees (as compared to Plaintiff) and received better ratings than Plaintiff.  Hence, age was not a criteria considered by Hargen in the workplace.

Plaintiff logged an internal age discrimination claim on December 26, 2011,[2] in an attempt to shield herself of the ordinary supervision a person within her classification and experience ordinarily receives.  In fact, Plaintiff admitted that she was unable to identify a single incident she would consider discriminatory.  According to her allegations, Plaintiff's overreaction to Hargen's evaluation was based on her unfounded belief she would be included in a future work force reduction program within Hewlett Packard.

In terms of Plaintiff's allegations of retaliation, they also lack merit.  For example, she claims that on January 10, 2012, her access to the internet was blocked.  At the time, Plaintiff was reporting back from a company wide Christmas shut down.  For some technical reason, Plaintiff's computer was not working properly.  Once she informed of the problem, Hewlett Packard repaired the computer and Plaintiff was able to access the internet the same day or the following.

Furthermore, once Plaintiff returned from Christmas vacations the company initiated an investigation of her discrimination allegations.  Plaintiff met with defendant Trabal as part of the investigation process.  During the interview she was not able to identify any specific event she considered as demonstrative of age discrimination.  The company invited Plaintiff to come back with additional information whenever she deemed it appropriate.  To this date, Plaintiff has not provided the Company with additional information to continue the investigation.

---

[2] Hewlett Packard shut down its operations for two weeks between Christmas and Three Kings day.

Plaintiff also claims that she was retaliated because Hargen did not meet with her for the mid-year review.  The fact is that the meeting between Plaintiff and Mr. Hargen was unilaterally cancelled by Plaintiff despite it been scheduled well in advance.

Finally Plaintiff claims that she has been the target of unjustified disciplinary memoranda.  This claim is simply false.  Hewlett Packard has taken no disciplinary action against Plaintiff.  In April 2012 Plaintiff did not report to work for a couple of days.  Hargen requested Plaintiff in an e-mail to let him know in future occasion of her absences as is the policy within the Company and Hargen requests to all his staff.  When a similar situation arose in June 2012 Hargen sent another e-mail to Plaintiff reiterating the policy.

To this date Plaintiff continues working in Hewlett Packard, performing the duties of her position, with the same authority and with the same benefits she previously enjoyed.

### III.   STIPULATED FACTS

1. González has a Bachelor's Degree in Industrial Engineering.

2. González commenced working for HP on July 3, 1984.

3. González is currently occupying the position of Chief of Staff at HP.

4. González is 51 years of age.

5. Trabal is currently HP's Human Resources Director.

6. Goodwin was Hargen's immediate supervisor.

7. Hargen became González's immediate supervisor in 2008.

8. During 2008, 2009 and 2010, González met HP's expectations and Hargen assigned a grade of "P" to González's work.

9.  "P" stands for "Achieves Expectations" in HP's performance grading scale.

10. Effective on November 9, 2010, as part of a reorganization within HP, González accepted Hargen's grade adjustment from Manager Engineering IV (Grade M29) to Business Strategy Manager III (Grade M28).

11. González' yearly salary remained the same ($135,102.996) after the grade adjustment.

12. On February 1, 2011, shortly after González accepted this grade adjustment, HP raised González' yearly salary to $142,213.67, as part of a company wide pay raise to all its employees.

13. Contemporaneously with the salary increase of February 1, 2011, and pursuant to HP's policy, González and Hargen met and established González's objectives for 2011.

14. These objectives are used by HP to measure an employee's performance during the year.

15. At the end of the yearly evaluation process for 2011, Hargen assigned a Partially Achieves Expectations ("PA") rating to González.

16. On December 26, 2011, González sent an e-mail to Hargen.

17. On February 27, 2012, González applied for six (6) available positions in her M28 level.   These positions were the following: (a) Requisition # 714798; (b) Requisition # 689246; (c) Requisition # 614215; (d) Requisition # 939022; (e) Requisition # 708440; and (f) Requisition # 717544.

18. On June 12, 2012, González expressed to Hargen her concern that Hargen had not yet provided his completed 2011 written evaluation of González'

performance.

19. Hargen did not meet with González for her 2012 mid-year evaluation.

20. On June 22, 2012 Hargen warned González that he wanted to "review [González's] planned absences from the office with [him] beforehand rather than merely informing [him] after the fact."

## IV.   LEGAL CONTENTIONS

### Plaintiff

ADEA provides, in sections 623 (a) and (b), that "[i]t shall be unlawful for an employer … (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with [ADEA]" and that "[i]t shall be unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.". Furthermore, ADEA also declares, in section 623(d), that "[i] shall be unlawful for an employer to discriminate against any of his employees or applicants for employment … because such individual … has opposed any practice made unlawful by [ADEA], or because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [ADEA]."

The purpose of the ADEA is to protect relatively old worker from discrimination that works to advantage of relatively young. *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581 (2004).  As for the section of the ADEA which prohibits an employer

from discriminating against an employee because the employee has opposed any practice made unlawful, the purpose of that section is to forbid the employer from retaliating against the employee because of the latter's opposition to unlawful employment practice. *Wanamaker v. Columbian Rope Co.*, N.D.N.Y.1995, 907 F.Supp. 522 (1995), affirmed 108 F.3d 462 (1997).

To prove age discrimination, employee need show only that age was determining factor in employer's decision, in sense that employment related decision would not have been made but for motive to discriminate on basis of age; employee need not show that age was sole factor motivating decision. *Kralman v. Illinois Dept. of Veterans' Affairs*, C.A.7 (Ill.), 23 F.3d 150 (1994), rehearing denied, cert denied, 513 U.S. 948 (1994). An employer is *prima facie* guilty of discrimination if its actions are based in part on employees' ages. *Equal Employment Opportunity Commission v. Baltimore and Ohio R. Co.*, C.A.4 (Md.), 632 F.2d 1107 (1980), cert denied 454 U.S. 825 (1981). To establish *prima facie* case of age discrimination under ADEA, employee bears burden of demonstrating that [employee] (1) was a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position held, and (4) was replaced by someone outside of the protected class or was treated differently than similarly situated employees outside the protected class. *Spencer v. National City Bank*, S.D.Ohio 2010, 732 F.Supp.2d 778. ADEA requires that employees over 40 be treated in neutral fashion, neither facilitating nor hindering advancement, demotion, or discharge. *Jackson v. Lyons Falls Pulp & Paper, Inc.*, N.D.N.Y.1994, 865 F.Supp. 87.

Congress intended the antiretaliation provision of the ADEA to enable employees to engage in protected activities without fear of economic retaliation. *Holt v. JTM*

*Industries, Inc.*, C.A.5 (Tex.), 89 F.3d 1224 (1996), rehearing and suggestion for rehearing en banc denied, 105 F.3d 658 (1996), certiorari denied, 520 U.S. 1229 (1997).  An employer may not retaliate against employee for bringing charges of age or sex discrimination. *West v. Marion Merrell Dow, Inc.*, C.A.8 (Mo.), 54 F.3d 493 (1995), rehearing and suggestion for rehearing en banc denied.  To prove *prima facie* case of retaliation, employee must demonstrate that (1) he engaged in protected activity, (2) the employer subjected him to adverse action or conduct that had an adverse impact on him, and (3) there is a causal link between the protected activity and the adverse action; employee may establish a causal connection by showing that employer had knowledge of employee's protected activity, and that the adverse personnel action took place shortly after that activity. *Williams v. Washington Convention Center Authority*, D.D.C.2005, 407 F.Supp.2d 4, appeal dismissed 481 F.3d 856 (2007), 375 U.S.App.D.C. 360, entered 222 Fed.Appx. 3, 2007 WL 1128390.  Because ADEA retaliation claim is an independent cause of action, employee's failure to prevail on his own age discrimination suit does not preclude retaliation cause of action under ADEA; hence, employee may assert retaliation claim even if underlying claim of discrimination fails. *Machin v. Leo Burnett, Inc.*, D.Puerto Rico 2005, 376 F.Supp.2d 188.

Hargen's intentions of hiding behind HP's *bona fide* work force reduction program in effect has been held to be in violation of antiretaliation provisions, such as those contained in Title VII, when it is implemented in an unlawful manner against an employee such as González.  *See, Collazo v. Bristol-Myers Squibb*, 617 F.3d 39, 51 (1st Cir 2010): "An employer may, of course, exercise its business judgment to eliminate positions as part of a company reorganization or reduction in force, even if the

individuals in those positions have engaged in protected activity or are members of protected groups. [citing] *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 422 (1st Cir.1996). However, an employer may not use 'reorganization' or 'layoff' as a convenient excuse for terminating an employee on a discriminatory or retaliatory basis. *Id.* 'Whether or not trimming the fat from a company's organizational chart is a prudent practice in a particular business environment, the employer's decision to eliminate specific positions must not be tainted by a discriminatory animus.'; [citing] *Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 69 (1st Cir.2002) ('[A]n employer may not try to shield a discriminatory or retaliatory termination by hiding it in a layoff.')."

In the case at bar, González's unexpected demotion and Hargen's assignment of a "PA" rating to her performance were both based exclusively on an animus of discrimination towards This animus began to become evident ever since Hargen told González that he had a lack of trust in her capability to perform, and it was further proven by the restriction of access to information ordinarily accessible to González, the deprivation of some of her duties, as well as the unilateral delegation by Hargen of responsibilities routinely performed by González to substantially younger employees within ISP.  Hargen's lack of explanation for giving González a negative evaluation and his refusal to meet with González in person to review her yearly goals and to discuss the quality of her performance, as required by HP's policies, are further evidence of the fact that there is nothing in González's record as an employee that warrants a demotion or a "PA" rating, and that Hargen has avoided giving any type of explanation simply because these adverse employment actions have been based on unlawful factors such as González's age.  Defendants have violated the provisions of the ADEA, because 1)

González, as a 51-year-old, is a member of the protected class, (2) González has suffered adverse employment actions when she received an unexpected and unwarranted demotion, has been subjected to an age-based hostile work environment, and was assigned the "PA" rating that has adversely affected her compensation by depriving her of increases based on HP's compensation custom and usage, (3) González is a qualified employee, with 28 years of experience, and (4) González has been treated differently than similarly situated employees outside the protected class, as her younger peers have not been subject to the same disparate treatment that González has endured at the hands of Hargen and Trabal.

As a consequence of González's decision to oppose Hargen's discriminatory practices, as well as her later decision to file complaints at the EEOC for discrimination on the basis of age and retaliation, González has been the subject of retaliation at HP. González has a *prima facie* case of retaliation, given the fact that (1) she engaged in protected activity when she opposed Hargen's discriminatory practices and when she filed the EEOC complaints, (2) HP subjected González to adverse conduct after she lodged these complaints, and (3) it was because González filed each of these complaints that HP began to take these retaliatory measures against González; HP was aware of the complaints filed by González, and HP's adverse actions against González began to take place after she filed them.  It was after she opposed Hargen's discriminatory treatment that González's internet access was blocked, that defendant Trabal suggested that she accept a demotion to an M27 level position, and that González was excluded from the process of eliminating the ISP positions and that she was denied access to information to which she was normally privy.  Furthermore, it was

after she filed her administrative charges of discrimination and retaliation that Hargen failed to meet with González for the mid-year evaluation and that he has continued to avoid meeting with her to assess her performance and to explain the "PA" classification. While it is time for the second evaluation cycle, since González opposed Hargen's unlawful and discriminatory conduct, she still awaits for the treatment to which she is entitled under HP's policies, procedures, custom and usage to which she has been accustomed for the last 28 years at HP.

**Defendants**

**A.      Age discrimination under ADEA.**

The ADEA makes it unlawful for an employer "to fail or refuse to hire or discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age". Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (*citing* 29 U.S.C. sec. 623 (a)(1)). However, an employer is only liable if age was the motivating factor in the employer's decision. That is, the plaintiff's age must have actually played a role in [the employer's decision making] process and had a determinative influence on the outcome". Reeves, 530 U.S. at 141 (*citing* Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

In the case at bar, Plaintiff bears the burden of establishing that her age was the determining factor in any adverse employment action alleged, and that Hewlett Packard intentionally discriminated against her on account of her age. Reeves, 530 U.S. at 143; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Usually, a plaintiff can support an age discrimination claim by furnishing either direct or

circumstantial evidence. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Regardless of the evidence presented, the plaintiff must present sufficient facts to establish whether the adverse employment action was attributable to his or her age. Adams v. Corporate Realty Services, Inc., 190 F. Supp. 2d 272, 276 (D.P.R. 2002) (*citing* Mandavalli v. Maldonado, 38 F. Supp. 2d 180, 191 (D.P.R. 1999)).

Recently, the Supreme Court held that a plaintiff in an ADEA case must prove "by preponderance of evidence that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Financial Services, 129 S. Ct. 2343, 2351 (2009). This means that, even if a plaintiff has produced "some evidence" that age was a motivating factor in the contested decisions, the burden of persuasion does not shift to the defendant and **still falls on the plaintiff to prove age was "the but-for cause of the challenged adverse employment action"**. *Id.* at 2352 (emphasis added).

### B.   Plaintiff's demotion claim is time barred.

As it is well know, on discrimination cases plaintiffs have to exhaust administrative remedies. Administrative charges alleging a violation of the ADEA must be filed within 180 days of the alleged unlawful employment practice. 29 U.C.S. §626(d)(1). "If there is an applicable state age discrimination law and agency, as there is in Puerto Rico, the time period is extended to 300 days". Rodríguez Lizardi v. Radio Shack Corp., 2010 U.S. Dist. LEXIS 72505, 6 (D.P.R. 2010) (*citing* 29 U.S.C. § 626(d)(2). Arroyo-Audifred v. Verizon Wireless, Inc., 431 F. Supp. 2d 215, 218 (D.P.R. 2006)). If the administrative charge is not filed within 300 days, then the plaintiff's cause of action is time-barred. Baerga Castro v. Wyeth Pharmaceuticals, 2009 U.S. Dist. LEXIS 80388, 34 (D.P.R. 2009). The 300 days begin to run when the employer's

decision is made and has been communicated to the affected employee. Id. (*citing* Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir. 1994)).

In the instant case, Plaintiff claims that in November 2010 she was demoted. She did not file a claim of discrimination until February 2012.  Hence, her discrimination claim arising from her alleged demotion is time-bared.

### C.   Plaintiff lacks direct evidence of age discrimination.

The First Circuit has stated that "[e]vidence is direct when it consists of statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment decision". Febres v. Challenger Caribbean Corporation, 214 F.3d 57 (1st Cir. 2000). Therefore, in order to qualify as "direct", the proposed evidence must have been made by a decision maker, reflect discriminatory animus, and must be related to the impugned employment decision.  Id.

To successfully argue that they have proffered "direct evidence" of discrimination, thus making the burden shifting scheme inapposite, a Plaintiff has to present admissible evidence that, **in and of itself, proves the ultimate fact (discrimination) without any process of inference**. **This case is devoid of direct evidence of discrimination**.

### D.   Plaintiff fails to establish a prima facie case of age discrimination under ADEA.

Plaintiff's allegations buttressing her age discrimination claims are not direct evidence of discrimination. The lack of direct evidence of discrimination forces plaintiff to satisfy her burden of proof by means of the now-familiar McDonnell Douglas burden-shifting framework.  *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). However, even under the application of this lightened scheme, the Court will reach the same unavoidable conclusion: that plaintiff lacks any evidence of discrimination against

her.

Under the McDonnell Douglas framework, the Plaintiff must make a prima facie case of discrimination by establishing four (4) elements: *(i)* that she is over 40 years of age; *(ii)* that she met her employer's legitimate job expectations; *(iii)* that she suffered an adverse employment action; and *(iv)* that she was replaced by someone significantly younger. Serrano Cruz v. DFI Puerto Rico Inc., 109 F. 3d 23 (1st Cir. 1997); Udo v. Thomes, 54 F. 3d 9, 12 (1st Cir. 1995).

Hewlett Packard will not dispute that Plaintiff meets the first element of the prima facie case; that is, Plaintiff is over 40 years of age. However, Plaintiff will be unable to establish the second, third and fourth elements of a prima facie case; that is, Plaintiff has not meet her employer's legitimate job expectations; she has not suffered any adverse employment action; and she has not been replaced in her position.

In light of the foregoing circumstances, it is more than evident that Plaintiff is unable to make a prima facie case of age-based discrimination.

### E.     Plaintiff fails to establish a harassment claim under ADEA

Plaintiff claims that after -and in consequence- of her e-mail communication to Hargen in December 2011, she was harassed.

To prove a hostile-work-environment claim, a plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct "is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive". Landrau-Romero v. Banco Popular de Puerto Rico, 212 F. 3d 607, 613 (1st Cir. 2000). When assessing whether a workplace is a hostile environment, the courts look to the totality of the

circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance. *Id.* (citing <u>Harris</u> v. <u>Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993).

Not all offensive conduct is actionable as harassment; trivial offenses do not suffice. *See* <u>Meritor Sav. Bank</u> v. <u>Vinson</u>, 477 U.S. 57, 67 (1986).  Under ADEA, a claim cannot be based on Plaintiff's own inferences "based upon otherwise bothersome, but age neutral, behavior". <u>Gutierrez Lines</u> v. <u>PREPA</u>, 2010 U.S. Dist. LEXIS 124066, 36 (DPR 2010) (*citing* <u>González</u> v. <u>El Día, Inc.</u>, supra at 69-70 (finding that where a comment may be interpreted as ageist or may alternatively be interpreted as benign, the Court may not base a finding of age discrimination solely upon them); <u>Acevedo Padilla</u> v. <u>Novartis Ex Lax</u>, 2010 U.S. Dist. LEXIS 104526 (D.P.R. 2010) (finding that a plaintiff's ADEA hostile environment claim failed where he failed to show that the behavior which constituted the basis for the claim was related to an age-based animus)).

To succeed in a hostile workplace environment claim under ADEA, Plaintiff must show: *(i)* that she is a member of the protected class; *(ii)* that she was subjected to unwelcomed harassment; *(iii)* that the harassment was based on her membership in the protected class; *(iv)* that the harassment was so severe or pervasive that it altered the conditions of her employment and created an abusive work environment; *(v)* that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and *(vi)* that some basis for employer liability has been established. <u>O'Rourke</u> v. <u>City of Providence</u>, 235 F. 3d 713, 728 (1st Cir. 2001) (*citing* <u>Faragher</u> v. <u>City of Boca</u>

Ratón, 524 U.S. 775, 787089 (1998)); Gutiérrez v. PREPA, *supra* at 34.

> (i)     *Plaintiff cannot establish that she was subjected to unwelcome harassment and that such harassment was so severe and pervasive that it altered the conditions of the employment and created an abusive work environment.*

From the outset, Plaintiff cannot establish that she was subjected to harassment. Plaintiff alleges she was harassed because she was not satisfied by the performance evaluation grading she received.  As a consequence, she avers she did not receive a pay increase and her performance bonus was lower than she considers fair.  She also alleges she has been deprived from the duties of her job, that the evaluation process was not completed and that she was disciplined in two occasions.

Plaintiff's perception that her performance evaluation was unwarranted does not, by itself, constitute age based harassment.  Rodriguez Machado v. Dept. of Veterans Affairs, 2012 U.S. Dist. LEXIS 25867 (D.P.R. 2012).

Furthermore, pay increases and performance bonuses are granted based on multiple factors, all of them totally unrelated to the employees' age.  She has not been deprived of her duties and she has not been disciplined at all.

In sum, Plaintiff lacks evidence to support a claim that the alleged conduct was so severe and pervasive that it created a hostile work environment or an abusive work environment.  Consequently her harassment claims fails.

> (ii)    *Plaintiff cannot establish that she was subjected to harassment or that any alleged harassment was based on her membership in a protected class.*

Courts have established that an employee claiming harassment must demonstrate that the hostile conduct was directed at her because of a characteristic protected by a federal anti-discrimination statute.  Lee Crespo v. Schering Plough del

Caribe, Inc., 354 F. 3d at 43 (1st Cir. 2003).

So far Plaintiff has not alleged facts, and certainly will be unable to present evidence, to establish that she was subjected to harassment.  So far Plaintiff's simply insert in her allegations, without providing factual support, a conclusory statement that things happened because of her age.

Hence, there are no facts, other than meritless inferences, that establish that any alleged harassment was based on Plaintiff's age.

> (iii)     *Plaintiff cannot establish that the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and that in fact the victim did perceive it to be so.*

The incidents alleged by Plaintiff are not objectively and subjectively offensive. Courts should filter out complaints on "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender related jokes, and occasional teasing". Faragher, *supra*, 524 U.S. at 788 (internal citations omitted). "After all, '[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins". Marrero, 304 F. 3d at 19 (emphasis added) (*citing* Suárez v. Pueblo International, Inc., 229 F. 3d 49, 54 (1st Cir. 2000).

The alleged facts do not amount to more than valid business and supervisorial actions. Thus, Plaintiff fails to establish a harassment claim under ADEA.

## F.   Hewlett Packard's legitimate business decisions cannot be proved pretext.

Once a plaintiff establishes a prima facie case, the burden shifts to defendant who must produce evidence that the adverse employment action was taken for a legitimate, non discriminatory reason. Texas Dept. of Community Affairs v. Burdine, 450

U.S. 248, 254 (1981). The employer's burden at this second stage is merely one of production; the burden of persuasion remains with the plaintiff at all times. <u>Reeves</u>, 530 U.S. at 142; St. <u>Mary's Honor Center</u> v. <u>Hicks</u>, 509 U.S. 502, 518 (1993).

The burden then shifts back to the plaintiff, who has to show that the defendant's proffered reason for its action was a pretext for discrimination. <u>Serrano Cruz</u> v. <u>DFI Puerto Rico, Inc.</u>, 109 F. 3d at 25-26; <u>Woods</u> v. <u>Friction Materials, Inc.</u>, 30 F. 3d 255, 260 (1st Cir. 1994). In this third prong, the plaintiff must do more than simply refute or cast doubt on the company's rationale; the plaintiff must show an impermissible discriminatory animus. <u>LeBlanc</u> v. <u>Great American Insurance, Co.</u>, 6 F. 3d at 842; <u>Vega</u> v. <u>Kodak Caribbean, Ltd.</u>, 3 F.2d 476, 479 (1st Cir. 1993).

It is a well-settled principle in employment law that the court's role is not to second-guess the business decisions of an employer, imposing the court's subjective judgments. <u>Petitti</u> v. <u>New England Tel. & Tel. Co.</u>, 909 F. 2d 28, 31 (1st Cir. 1990); <u>Boyajian</u> v. <u>Starbucks Corp.</u>, 587 F. Supp. 2d 295, 305 (D. Me. 2008). That is, the court may not sit as a super-personnel department, assessing the merits –or even the rationality- of employers' non-discriminatory business decisions. <u>Rodríguez Cuervos</u> v. <u>Wal-Mart Stores, Inc.</u>, 181 F. 3d 20,22 (1st Cir. 1999); <u>Smith</u> v. <u>Stratus Computer, Inc.</u>, 40 F. 3d 11, 16 (1st Cir. 1994), *cert denied*, 514 U.S. 1108 (1995). No matter how medieval a firm's practice, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. <u>González</u> v. <u>El Día, Inc.</u>, 304 F. 3d 63, 69 (1st Cir. 2002).

Hewlett Packard has a performance evaluation process that measures the employees' work based on legitimate business criteria.  In addition, an employee's

individual performance is just but one factor Hewlett Packard considers to grant pay increases or bonuses.  Such factors do not take into consideration the employee's age. Furthermore, the incidents Plaintiff wrongly considers were disciplinary actions, were ordinary requests from her immediate supervisor to ask her to notify whenever she would not report to work. In accordance with the applicable standard, Plaintiff lacks any evidence to rebut Hewlett Packard's business decisions, which were completely unrelated to her age.

In view of the foregoing, the legitimate, non-discriminatory reasons offered by Hewlett Packard are compelling enough. Moreover, as it has been explained, Plaintiff fails to show a discriminatory animus based on age. See <u>Connell</u> v. <u>Bank of Boston</u>, *supra*. The Court should not lose sight that an employer is entitled to make its own policy and business judgments and may even fire even an adequate employee, if the reasons to do so are not discriminatory. *See* <u>Loeb</u>, 600 F. 2d at 1019-1020. The Court may not supplant Hewlett Packard's decision with its own as long as it is satisfied that the defendant had a non-discriminatory rationale for its decision. **In this case, Hewlett Packard has certainly satisfied its burden in this respect.**

Where, as in the instant case, the defendant uses factors other than age as grounds for employment-related actions, and the plaintiff does not have evidence to demonstrate that age was a determinative factor for such actions, the plaintiff has failed in her turn to show pretext for discrimination.

Since Hewlett Packard has shown a legitimate, non-discriminatory reason for all its actions regarding Plaintiff's allegations, the burden shifts back to her. Plaintiff "can no longer rest on the initial inference of discrimination but, rather, must show that [Hewlett

Packard's] articulated reason is pretextual".  Thompson v. Coca Cola Co., 522 F. 3d 168, 177 (1st Cir. 2008); Bennett v. Saint Gobain Corp., 507 F. 3d at 31. "To meet this burden, [Plaintiff] must prove not only that the reason articulated by [Hewlett Packard] was a sham, but also that its true reason was plaintiff's [age]". Cruz Ramos v. Puerto Rico Sun Oil Co., 202 F. 3d 381, 384 (1st Cir. 2000); Rodríguez Cuervos v. Wal Mart Stores, Inc., 81 F. 3d at 19. Put differently, Plaintiff cannot prevail by merely questioning the veracity of Hewlett Packard's justification, but she must elucidate specific facts which would enable a jury to find that the reason given is a sham intended to cover up the employer's real motive, age discrimination. Piñeiro Ruiz v. Puerto Rico Ports Auth., 557 F. Supp. 2d, 248, 253 (D.P.R. 2008); Morales Figueroa v. Banco Bilbao Vizcaya Argentaria, 550 F. Supp. 2d at 226; Mesnick, 950 F. 2d at 824. Plaintiff needs to "show more than [her] employer miscalculated in deciding that [she] had outlived [her] corporate usefulness; good-faith errors in an employer's business judgment are not the stuff of ADEA transgressions". Morales Figueroa v. Banco Bilbao Vizcaya Argentaria, supra (citations omitted).

Pretext means more than an inusual act; it means something worse than "business error".  Pretext means deceit used to cover one's tracks; "something that is put forward to conceal a true purpose or object".  See Kouvchinov v. Parametric Tech. Corp., 537 F. 3d 62, 67 (1st Cir. 2008); Ronda Pérez, 404 F. 3d at 45.  In this context, the question is whether the defendant's explanation of its conduct, together with any other evidence, could reasonably be seen by a jury not only to be false but also to suggest an age-driven animus. Ronda Pérez, 404 F. 3d at 44; Candelario-Ramos v. Baxter Healthcare Corp of P.R., 360 F. 3d 53, 56 (1st Cir. 2004); Zapata-Matos, 277

F.3d 40, 45 (1ˢᵗ Cir. 2002). In assessing pretext, the Court considers the perception of the decision-maker; that is, whether the employer believed its stated reason to be credible. Kouvchinov v. Parametric Tech. Corp., *supra*.

In light of the foregoing principles, it is evident that Plaintiff cannot elucidate specific facts which would enable a jury to find that the reasons given by Hewlett Packard were a sham intended to cover up the defendant's purported real motive, age discrimination.

### G.    Plaintiff cannot establish a retaliation claim under ADEA.

In order to engage in protected activity under the ADEA, the plaintiff must establish that he or she complained alleging that he or she was discriminated because of her age. *See* Ramírez Rodríguez v. Boehringer Ingelheim Pharms., 425 F. 3d 57 (1ˢᵗ Cir. 2005) (*citing* Mesnick v. General Electric Co., 950 F. 2d 816 (1ˢᵗ Cir. 1991)). The anti-retaliation provision of the ADEA states as follows:

> [i[t shall be unlawful for an employer to discriminate against any of his employees… because such individual … has opposed any practice made unlawful by this section, or … made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter". 29 U.S.C. § 623(d).

A plaintiff must establish three elements to prove a prima facie case of retaliation under the ADEA: (i) that she engaged in protected conduct; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. Ramírez Rodríguez v. Boehringer Ingelheim Pharm., 425 F.3d at page 84.

Plaintiff's allegations of adverse employment actions taken against her as a result of her December 26, 2011, e-mail are the same events for which she claims been

discriminated.   To prevent being repetitive, we refer to the previous discussions regarding the matter.   In any event, Hewlett Packard has previously established that Plaintiff's allegations do not constitute adverse employment actions.   Furthermore, Plaintiff cannot establish a connection between the alleged adverse employment actions and her protected conduct.   In any event, Hewlett Packard's actions were related to legitimate business decisions that are not related to the alleged protected conduct.

### H.   Plaintiff's supplemental claims pursuant to Law No. 100 and Local Law No. 115

#### i.   Plaintiff's claims under Local Act No. 100

For a plaintiff to establish a cause of action for discrimination under local law, it is crucial to follow the procedural scheme specified in Act No. 100. Hernández v. Trans Oceanic Life Insurance Company, 2000 T.S.P.R. 115 (2000). Act No. 100 creates a presumption of unlawful discrimination in those cases when an employee is terminated or adversely affected without just cause by an employer's decision. P.R. Laws Ann. Tit. 29, sec. 148; García Pagán v. Shiley Caribbean, 122 D.P.R. 193, 198-199 (1988).

To establish a claim for discrimination pursuant to Law 100, it is the employee's duty to establish the burden of proof of her claim and, in that manner, activate the presumption of discrimination. Id. For a plaintiff to activate the presumption of discrimination, she must establish three elements: (a) that there was a dismissal or an adverse employment action; (b) that this action was carried out without just cause; and, (c) must show evidence which demonstrates the form or basis of the discrimination in relation to the dismissal or adverse action. Hernández Galo, supra; Alberty Marrero v. Rodríguez Emma, 2000 T.S.P.R. 166 (2000). After plaintiff established these three elements, the burden of proof is shifted to the employer, who must then establish that

30

no discriminatory action was taken.

In the instant case there are no facts justifying the activation of any presumption. As it has been previously discussed, Hewlett Packard had legitimate, non-discriminatory reasons for all the actions or incidents identified on Plaintiff's Amended Complaint. Also, Plaintiff cannot establish that she was subject to a hostile work environment in the workplace.

      ii.    Plaintiff's claims under Local Act No. 115.

Puerto Rico Law 115 prohibits employers from discriminating against employees in retaliation for engaging in protected activities. It prohibits employers from discriminating against employees for "offer[ing] or attempt[ing] to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." P.R. Laws Ann. tit. 29 § 194a(a). Employees must establish they engaged in activity protected under Law 115 and **then** suffered discrimination at work. Velez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006); MVM, Inc. v. Rodriguez, 568 F. Supp. 2d 158, 176-77 (D.P.R. 2008); Uphoff-Figueroa v. Alejandro, 597 F.3d 423, 433 (1st Cir. 2010). Law 115 does not prohibit retaliation in response to internal complaints, only offerings to a legislative, administrative or judicial forum. Hoyos v. Telecorp Commc'ns., 405 F. Supp. 2d 199, 207 (D.P.R. 2005).

Defendants have already established that they did not retaliate against Plaintiff for filing charges of discrimination. Such arguments are adopted herein as if fully repeated here.

      iii.    The Court should not exercise supplemental jurisdiction over Puerto Rico Law 100 since it requires a different burden of proof than an ADEA claim which in all probability will confuse the jury.

The Courts may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right". See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); Izquierdo Prieto v. Mercado Rosa, 894 F.2d 467, 473 (1st Cir. 1990).  Consequently jurisdiction may be declined if:  (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  See 28 U.S.C. § 1367(c).  Additionally, the Courts should refuse to exercise supplemental jurisdiction when:

> …the likelihood of **jury confusion in treating divergent legal theories** of relief, that would justify separating state and federal claims for trial, Fed. Rule Civ. Proc. 42(b).  If so, **jurisdiction should ordinarily be refused**.  (Emphasis added.)

See Gibbs, 383 U.S. at 727.  See also Izquierdo Prieto, 894 F.2d at 473.

Accordingly, courts have declined to exercise their discretionary jurisdiction over state law claims where those claims had a different burden of proof than federal question claims.  See Ortiz Rivera v. Black & Decker, 1993 WL 52749, 1993 U.S. Dist. LEXIS 2088 (D.P.R. 1993); Linares v. University of Puerto Rico, 722 F.Supp. 910, 912 (D.P.R. 1989).  Considering exactly the same conflict between the ADEA and Law 100, the Ortiz Rivera Court correctly concluded that:

> …there is a strong likelihood of jury confusion regarding the differing burdens.  In addition to the strong likelihood of jury confusion, the Court believes that **the exercise of pendent jurisdiction would allow the plaintiff to rest on the better of two burdens and attempt to prove only the state claim and receive broader remedies than allowable under the federal law.**  To avoid this inequity, the defendant has to assume the heavier burden from the

beginning, to rebut the presumption of discrimination and under *Board of Regents v. Sweeny*, 439 U.S. 25 (1978), the employer may not be required to prove the absence of a discriminatory motive to defend an ADEA claim.

Another factor the Court must consider in determining whether to exercise its discretion to hear a pendent non-federal claim is whether the state law issues predominate, in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedies sought. *Gibbs*, 383 U.S. at 752. In this case the state law issues definitely predominate.  First, plaintiff alleges that in addition to discriminating against him on the basis of age, defendant also discriminated against him on the basis of his national origin as well.  Plaintiff does not claim, and the Court does not believe, that he has a cause of action under the ADEA because he was discriminated about on the basis of his national origin; hence, plaintiff has redress for this part of his grievance only under the state statutes.  More important, is the fact that in this case, Law 100 permits a plaintiff to recover damages including mental anguish and suffering, in those cases where they are duly established.  *García Pagán v. Shiley Caribbean*, 88 J.T.S. 101, RE 86-206 Of.Tr. 17 (June 30, 1988).  Recovery for such types of damages are not permitted under ADEA.  *Haskell v. Kaman Corp.*, 743 F.2d 113, 120-21 n. 2 (2d Cir.1984); *Vázquez v. Eastern Airlines, Inc.*, 579 F.2d at 107, 112 (1st Cir.1978).  In his Law 100 claim, plaintiff seeks damages for mental suffering and humiliation in the sum of $200,000.00. Because under the ADEA the plaintiff is only entitled to liquidated damages in an amount equal to the amount deemed to be unpaid minimum wages or unpaid overtime compensation and may not recover damages for pain and mental suffering, the state claim might easily become the predominant claim in the case given the extent of monetary damages sought.  See *Linares*, 722 F.Supp. at 912.  Furthermore, the presentation of evidence of pain and suffering would unduly influence the jury. (Footnotes omitted.)

See Ortiz Rivera, 1993 WL 52749, *2, 1993 U.S. Dist. LEXIS 2088, *5-8.

The strong likelihood of confusion recognized in Ortiz Rivera is more predominant today after Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343 (2009), which widened the gap between both burdens of proof.  As explained in Gross, to prevail in an ADEA claim, an employee must prove by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action.  See Gross, 129

S.Ct. at 2351.  In other words, an employee must prove that age was the only reason (not one of the reasons) for the adverse employment action.  See <u>Gross</u>, 129 S.Ct. at 2350.[3]

Under Law 100 the burden of proof is completely different.  The initial burden falls on the employee, who must establish a *prima facie* case of discrimination by demonstrating that he was actually or constructively discharged and alleging that the decision was discriminatory.  See <u>Hoyos v. Telecorp Communications, Inc.</u>, 488 F.3d 1, 7 (1st Cir. 2007).  Once such a showing has been made, **the burden of persuasion shifts to the employer to defeat the presumption.  The employer must prove by a preponderance of the evidence that the discharge was made for good cause**.  See <u>Hoyos</u>, 488 F.3d at 7.  If the employer carries its burden, the burden of persuasion shifts back to the employee to demonstrate that the discharge was motivated by discrimination.  See <u>Hoyos</u>, 488 F.3d at 7.

In the captioned case Plaintiff requests $750,000.00 in damages under ADEA and Law 100 for mental anguishes.  **See Docket No. 15, page 16, ¶ e.**  However, emotional damages are not recoverable under the ADEA.  See <u>Vázquez v. Eastern Airlines, Inc.</u>, 579 F.2d 107, 109 (1st Cir.1978); <u>Ortiz Rivera</u>, 1993 WL 52749, *2, 1993 U.S. Dist. LEXIS 2088, *7.  Additionally, if the Court does not refrain from exercising supplement jurisdiction, the jury will receive at trial two different (and contradictory) instructions on the law in order to analyze the same set of facts and determine whether Hewlett Packard discriminated against Plaintiff because of her age.  That will create an incurable wave of uncertainty and confusion among the members of the jury, whom are

---

[3]  The Court expressly declined to apply the burden shifting framework commonly used in Title VII cases, holding that the ADEA's requirement that an employer took an adverse action "because of" age means that age was **the reason** for the employer's action.  See <u>Gross</u>, 129 S.Ct. at 2349-2350.

usually lay people without prior legal instruction.  The burden of proof for Law 100 and the ADEA are so different that a jury, considering the same set of facts, could arrive at different and irreconcilable conclusions for each claim.  Therefore, the Court should refrain from exercising its supplemental jurisdiction and consequently dismiss Plaintiff's Law 100 claims.

> iv.  The Court should not exercise supplemental jurisdiction over Plaintiff's state law claims against defendants Hargen, Trabal and Goodwin.

Plaintiff conceded that there is no individual liability under the ADEA.  See Docket No. 19, at pages 1-2.  Thus, she limits her claims against the individual defendants to her state law claims under the Law 100 and Law 115.  The Honorable Court should not exercise its supplemental jurisdiction over these individual defendants.

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right".  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); Izquierdo Prieto v. Mercado Rosa, 894 F.2d 467, 473 (1st Cir. 1990).  Since there is no federal claim against the individual defendants, it is respectfully submitted that this Honorable Court should not exercise supplemental jurisdiction to entertain Plaintiff's Law 100 and Law 115 claims against them and instead should dismiss these claims without prejudice.  See 28 U.S.C. §1367(c)(3); Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) ("[t]he power of a federal court to hear and determine state law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit"); Rivera-Tirado v. Autoridad de Energia Electrica, 2009 U.S. Dist. LEXIS 77812 (D.P.R. 2009); Velez Cabrera v. Autos del Caribe, 2010 U.S. Dist. LEXIS 45137 (D.P.R. 2010).

In the instant case, Plaintiff cannot state a cause of action against the individual defendants under the ADEA.  As such, there are no substantial federal claims against

them in the lawsuit.   Consequently the Court should not exercise its supplemental jurisdiction and should dismiss Plaintiff's state law claims without prejudice.

**I.    Plaintiff's claims against Goodwin should be dismissed from this action due to lack of personal jurisdiction.**

Goodwin respectfully submits that this Honorable Court lacks *in personam* jurisdiction over him due to the lack of sufficient contacts between him and Puerto Rico. Plaintiff has failed to allege facts which establish the necessary minimum contacts in order to establish *in personam* jurisdiction over Goodwin.  The allegations contained in the Complaint, as it pertains to Goodwin, merely state that Goodwin was Hargen's immediate supervisor and Gonzalez' supervisor, that she complained of discrimination to Hargen and informed Goodwin of said complaint and that Goodwin has not contacted her.

As will be outlined in detail below, given that Plaintiff has failed to meet her burden of establishing *in personam* jurisdiction, the Court should dismiss the Amended Complaint against Goodwin.

**1.    General Principles Governing In Personam Jurisdiction.**

*In personam* jurisdiction is the power a court has over a defendant.  See <u>Foster-Miller, Inc. v. Babcock & Wilcox Canada</u>, 46 F.3d 138, 143 (1st Cir. 1995); <u>Pritzker v. Yari</u>, 42 F.3d 53, 59 (1st Cir. 1994).  As recognized by the First Circuit Court of Appeals, Puerto Rico's long-arm statute "stretches up to point allowed by the Constitution." <u>Negron–Torres v. Verizon Communications, Inc.</u>, 478 F.3d 19, 24 (1st Cir. 2007) (referring to Rule 4.7 of the Puerto Rico Rules of Civil Procedure).[4]  To this effect, "[t]he

---

[4] This is the case even after the 2009 amendments to the Puerto Rico Rules of Civil Procedures which changed the language of former Rule 4.7 to the re-numbered Rule 3.1, insofar as this new version provides that Puerto Rico Court's shall have jurisdiction over "non-domiciled individuals who have

court may exercise its power over a nonresident defendant by way of either general or specific jurisdiction." Rivera v. Atlass Ins. Group of Fl., Inc., 678 F.Supp. 2d 23, 30 (D.P.R. 2010). "[G]eneral jurisdiction exists when litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity unrelated to the suit, in the forum state." Id. "On the other hand, when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising 'specific jurisdiction' over a defendant." Id.

Once *in personam* jurisdiction is contested, the plaintiff bears the burden of proving sufficient facts in support of personal jurisdiction in the forum state. See Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.1998); Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). In complying with the required *prima facie* showing, **the plaintiff must produce evidence of specific facts to defeat a motion to dismiss**. See Kowalski v. Doherty, 787 F. 2d 7, 9 (1st Cir. 1996). "The plaintiff must go beyond the pleadings and make affirmative proof." Rivera, 678 F.Supp. 2d at 28. The Court should accept "'properly supported proffers of evidence by a plaintiff as true.'" Id.

## 2. Specific Jurisdiction.

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Carreras v. PMG Collins, LLC, 741 F. Supp. 2d 375, 384 (D.P.R. 2010) (citing Mass. Sch. of Law at Andover, Inc., 142 F.3d at 34). "The inquiry regarding specific jurisdiction involves a tripartite analysis." Carreras,

contacts which make the exercise of jurisdiction compatible with applicable constitutional requirements." P.R. Laws Ann. tit. 32 Ap. III R. 3.1(a)(2).

741 F. Supp. at 384 (citing <u>Phillips Exeter Acad. v. Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 289 (1st Cir. 1999). This tripartite "constitutional analysis is divided into three categories: relatedness, purposeful availment, and reasonableness." <u>Rivera</u>, 678 F. Supp. 2d at 30 (quoting <u>Phillips Exeter Acad.</u>, 196 F.3d at 30). In order for a court to find specific jurisdiction, "an affirmative finding on each of these three elements of the test is required." Id. (citing <u>Negron-Torres</u>, 478 F. 3d at 24).

> **a.    Plaintiff has failed to establish the relatedness prong.**

In order to "satisfy the relatedness requirement, 'the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." <u>Rivera</u>, 67 F. Supp. 2d at 30 (citations omitted). Here, Plaintiff makes the conclusory allegation that "all the discriminatory employment practices alleged herein were committed within the judicial district comprising the Commonwealth of Puerto Rico." See Docket No. 15, at ¶1.3. Such conclusory allegations are insufficient for purposes of establishing personal jurisdiction. Id. at 28. Thus, Goodwin submits that Plaintiff has not established that her causes of action directly arise from or relate to his conduct in Puerto Rico.

In addition, at all relevant times Goodwin has resided in Meridian, Idaho, and reports to work on Boise, Idaho on a daily basis. Goodwin does not have an office in Puerto Rico; has no property or assets in Puerto Rico, including but not limited to real property, personal property, or bank accounts; has not paid local taxes in Puerto Rico; and does not have a telephone number or telephone listing in Puerto Rico.

> **b.    Goodwin has not purposefully availed himself of the privilege of conducting activities in Puerto Rico.**

The next category of the analysis requires the Plaintiff to establish that defendant

purposefully conducted activities within the forum state, thus invoking the benefits and protections of its laws.  See J. McIntyre Machinery, Ltd. V. Nicastro, ___ U.S. ___, 131 S.Ct. 2780, 2788 (2011) (plurality opinion).   The conduct of business transactions occurring in Puerto Rico must be a purposeful act performed by the defendant upon whom personal jurisdiction is sought.   See A.H. Thomas Co. v. Superior Court, 98 P.R.R. at 869; González v. Muñoz, 597 F. Supp. 1231, 1234 (D.P.R. 1984) aff'd mem., 767 F.2d 905 (1st Cir. 1985).  "[T]he inherent forseeability of consequences is one of the keystones of personal jurisdiction[,], [Rivera,. 678 F. Supp. 2d at 31 (citations omitted)] and "[f]orseeability requires that a defendant's contacts with the forum be such that said party 'should reasonably anticipate being hauled into court there.'"  Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 297 (1980)).

Again, Plaintiff has not made sufficient allegations or presented any evidence that Goodwin has performed any affirmative acts or has purposefully availed himself of the privileges and protections of the laws of Puerto Rico. Indeed, Goodwin did not intend to do so.

As previously stated, Goodwin resides in Meridian, Idaho and works in Boise, Idaho, where he reports on a daily basis.  Goodwin does not have an office; has no property or assets in Puerto Rico, including but not limited to real property, personal property, or bank accounts; has not paid local taxes in Puerto Rico; and does not have a telephone number or telephone listing in Puerto Rico.

As a result of the foregoing, Plaintiff cannot establish that Goodwin purposely availed himself of the benefits and privileges of the Commonwealth.

        **c.**     **It would be unreasonable to force Goodwin to submit to the jurisdiction of Puerto Rico.**

If Plaintiff establishes prongs one and two above -- which leads to a minimum contact between Goodwin and Puerto Rico -- the Court should look to the third prong. As argued above, the first two prongs of the test have not been satisfied by Plaintiff. Notwithstanding, even if Plaintiff ultimately satisfies the first two prongs of the test, which Goodwin denies, the reasonableness prong of the test has not been satisfied. In evaluating the reasonableness prong, "even if such requisite contacts exist, the court's exercise of jurisdiction must comport with fair play and substantial justice." Rivera, 678 F. Supp. 2d at 32.

In measuring reasonableness, courts must consider factors regarding the fairness of subjecting a nonresident to the authority of a foreign tribunal. See Donatelli v. Nat'l Hockey League, 893 F. 2d 459, 464-465 (1st Cir. 1990). To this effect, the Supreme Court has identified five (5) relevant criteria: 1) the defendant's burden of appearing; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the judicial system's interest in obtaining the most effective resolution of the controversy; and 5) the common interests of all sovereigns in promoting substantive social policies. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985); see also Rivera, 678 F. Supp. 2d at 32. The First Circuit Court has identified these five criteria as the "gestalt factors." Donatelli, 893 F.2d at 465.

Regarding the first factor, the Defendant's burden of appearing, it strongly favors dismissal of the action. Goodwin is an Idaho resident and does not own or lease any property in Puerto Rico. He lives in Meridian, Idaho and works Boise, Idaho, where he reports to work on a daily basis. Goodwin does not have an office; has no property or

assets in Puerto Rico, including but not limited to real property, personal property, or bank accounts; has not paid local taxes in Puerto Rico; and does not have a telephone number or telephone listing in Puerto Rico.  Thus, it is a significant burden for Goodwin to appear in Puerto Rico.

Regarding the second and third factors, the allegations of the Complaint are devoid of any indicia to favor adjudicating the dispute in this District.  Furthermore, **any alleged action or inaction of Goodwin did not take place within the Commonwealth of Puerto Rico**.  Hence, the Commonwealth has no compelling interest in adjudicating this dispute.

The fourth gestalt factor is the judicial system's interest in obtaining the most effective resolution of the controversy.  This factor does not favor any party. While this forum has an interest in obtaining effective resolution to the controversy herein, the U.S. District Court where Goodwin resides also has such an interest, given that Defendant is a resident of Idaho and any alleged action or omission he committed presumably took place there.

The fifth factor is the common interests of all sovereigns in promoting substantive social policies.  Again, this factor does not favor any party.

Given the limited activities and transactions of Goodwin in this forum, the due process notions of fair play and substantial justice would be offended if *in personam* jurisdiction were to be found.

### 2.    General Jurisdiction.

As outlined above, "only the 'continuous and systematic pursuit of general business activities in the forum state' shall suffice for general jurisdiction." Carreras, 741

F. Supp. 2d at 387 (citing <u>Glater v. Eli Lilly & Co.</u>, 744 F.2d 213, 216 (1st Cir. 1984)).  In addition, "the standard for evaluating whether contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions.'"  Id.

As stated above, Goodwin resides in Meridian, Idaho.  He also works in Idaho (Boise); does not have an office in Puerto Rico; has no property or assets here, has no real or personal property within this district; does not have bank accounts in Puerto Rico; has not paid local taxes in Puerto Rico; and does not have a telephone number or telephone listing in Puerto Rico.  See e.g., <u>Rivera</u>, 678 F. Supp. 2d at 34; <u>Carreras</u>, 741 F. Supp. 2d at 387; <u>Rivera-Garcia v. Sprint PCS Caribe</u>, 2011 WL 3328415 *7-8, Case No. CIV-09–1813-OG (D.P.R. Aug. 2, 2011).  Thus, any limited contact Goodwin may have in this district do not reflect the type of continuous and systematic activity sufficient to meet the standard of general personal jurisdiction.

As warranted by the applicable statutory and case law, Goodwin lacks the minimum contacts with Puerto Rico necessary to establish *in personam* jurisdiction.  In view of the foregoing, this Honorable Court lacks *in personam* jurisdiction over Goodwin and, therefore, the Complaint should be dismissed as to Goodwin.

VI.   **WITNESSES**

**Plaintiff**

1.  Plaintiff Lisbeth González – has knowledge as to all aspects of her case including liability and damages

2.  Paul T. Hargen – immediate supervisor – has knowledge of plaintiff's performance, capacity and training, as well as his discriminatory actions

and omissions executed through deviations in the evaluation process and retaliation for having opposed discriminatory conduct and seeking administrative relief

3. David Trabal – Human Resources Director – has knowledge as to plaintiff's claims of age discrimination and retaliation; about his failure to thoroughly investigate plaintiff in claims of age discrimination; about his suggestion that plaintiff accept a demotion and/or apply for positions within HP for which he knew she would not be considered.  Trabal has aided in the discrimination and participated in the retaliatory treatment against plaintiff.  He also has knowledge of the applicable policies and of Hargen's and his deviations from them to discriminate and retaliate against plaintiff.

4. Rick Goodwin – has knowledge as to plaintiff's claims of discrimination by his immediate supervisor, Paul T. Hargen, and of his failure to intervene in disregard of HP's policies and to plaintiff's prejudice.

5. Dr. Alberto Rodríguez Robles –Treating Physician – will testify regarding the diagnosis, etymology, emotional condition and treatment of Lisbeth González Camacho.

6. Marta Gaud – Administrative Assistant to Lisbeth González Camacho – will testify regarding the discriminatory and/or retaliatory treatment to which plaintiff has been subjected by defendants.

The following witnesses have knowledge as to their specific ratings by Paul T. Hargen and the compensation increases received as a result of positive evaluation ratings.   Their testimony will establish the disparate treatment

because of age of which plaintiff has been a victim:

7.  Mercedes Hernández

8.  Menashe Ben Chaim

9.  Marianna Marshall

10. Ixia Rodríguez

11. Sandra Delgado

12. Luis Mañán

Plaintiff hereby reserves the right to amend and/or supplement this list of witnesses as disclosed throughout the process of discovery in this case, and upon application to the Court. Plaintiff further reserves the right to call any of the witnesses announced by Defendants.

**Defendants**

At this early stage of litigation, Defendants cannot foresee all the witnesses that might be used during litigation.  Nevertheless, at this juncture, Defendants believes the following persons might be used as witnesses during litigation. Furthermore, since discovery has yet to commence, Defendants reserve the right to include or delete witnesses from this list.  Plaintiff will be notified with sufficient time to conduct any discovery.

1.  Paul Hargen – Operations Manager.  He will testify as to his duties and responsibilities, the company policies, the performance evaluation process of his staff, his supervisory duties over his staff and the allegations made by Plaintiff.

2.  David Trabal – Human Resources Director.  He will testify as to his duties

and responsibilities, the company policies, the performance evaluation process, the investigation he conducted in this case and the allegations made by Plaintiff.

3. Rick Goodwin – General Manager/Vice-President of Business Unit. Without submitting to the Court's jurisdiction, he will testify as to his duties and responsibilities, his residence and personal whereabouts and the allegations made by Plaintiff.

4. Sandra Delgado – Manufacturing Operations Manager. She will testify as to her duties and responsibilities, the workplace environment and her interaction with Plaintiff.

5. Martin Castillo – Global Accounts and Enterprise Sales Director.  He will testify as to his interaction with Plaintiff.

6. Jeanette Padín – Executive Assistant.  She will testify as to her duties and responsibilities, the workplace environment and her interaction with Plaintiff.

7. Mercedes Hernández – Supplies Operations Manager.  She will testify as to her duties and responsibilities, the workplace environment and her interaction with Plaintiff.

8. Luis Mañan - Supplies Chain Operations Manager.  She will testify as to her duties and responsibilities, the workplace environment and her interaction with Plaintiff.

9. Ixia Rodríguez – Product Development & Engineering Manager.  She will testify as to her duties and responsibilities, the workplace environment and

her interaction with Plaintiff.

10.     Defendants will hire a consultant to evaluate Plaintiff's emotional state. Defendants will later determine whether the consultant will be used as an expert.

## VII.   DOCUMENTARY EVIDENCE

**Plaintiff**

1. Plaintiff's personnel file at HP

2. Plaintiff's complete performance evaluation record

3. All documents justifying "PA" rating of Plaintiff

4. Applicable Rules and Regulations at HP

5. Documents reflecting the objectives with which Plaintiff had to comply

6. Investigation file(s) of plaintiff's discrimination claims at HP

7. Compensation packages for similarly situated individuals in plaintiff's work area

8. Plaintiff hereby reserves the right to amend and/or supplement this list of documentary evidence as disclosed throughout the process of discovery in this case, and upon application to the Court.

**Defendant**

At this early stage of litigation, Defendants cannot foresee all the documentary evidence that might be used during litigation.  Nevertheless, at this juncture, Defendants believes the following documents might be used during litigation.  Furthermore, since discovery has yet to commence, Defendant reserves the right to include or delete documents from this list.  Plaintiff will be notified with sufficient time to conduct any

discovery.

     1.     Plaintiff Lisbeth Gonzalez' personnel file.

     2.     Hewlett Packard's relevant human resources policies.

     3.     Investigation report.

## VIII.   PENDING DISCOVERY

The parties, represented by their respective counsel of record, participated in a Rule 26(f) conference on November 9, 2012, by meeting in person at Baerga & Quintana Law Offices.  As a result of that meeting, the parties agreed to the following discovery plan:

1. The parties will submit Interrogatories and Requests for Production of Documents to Defendants on or before January 31, 2013.

2. Plaintiff anticipates taking the deposition of:

    a)     David Trabal on March 5, 2013.

    b)     Mercedes Hernández on March 25, 2013.

    c)     Menashe Ben Chaim on March 26, 2013.

    d)     Marianna Marshall on March 27, 2013.

    e)     Ixia Rodríguez on March 28, 2013.

    f)     Sandra Delgado on March 29, 2013.

    g)     Luis Mañan on March 29, 2013.

    h)     Paul T. Hargen on April 24, 2013.

    i)     Rick Goodwin on April 25, 2013.

3. Defendants anticipate taking the deposition of Plaintiff's witnesses:

    a)     Lisbeth Gonzalez on February 28, 2013.

      b)     Dr. Alberto Rodríguez Robles on April 18, 2013.

4.  All expert reports are due by May 15, 2013.  The parties will announce their identities forty five (45) days before the reports are due.

5.  Expert depositions will be taken by the parties on June 25-26, 2013.

6.  The parties may submit requests for admissions by July 15, 2013.

7.  The parties reserve the right to make additional discovery as permitted by the Federal Rules of Civil Procedure.

## IX.   NOTICE OF COMPLIANCE WITH FRCP 26(a)(1)

The parties already exchanged their respective initial disclosures as required by FRCP 26(a)(1).

## X.   OTHER MATTERS

**Plaintiff**

1.  Motion to Dismiss Amended Complaint, **DE 16**

2.  Opposition to Motion to Dismiss Amended Complaint, **DE 17**

**Defendants**

Defendants Hewlett Packard, Paul Hargen and David Trabal's Motion to Dismiss Amended Complaint (Docket No. 16) is pending.  Defendant Rick Goodwin will be moving to dismiss the Amended Complaint shortly.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 30th day of November, 2012.

**CERTIFICATE OF SERVICE:**  We hereby certify that on this date, the undersigned attorneys have electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to:  **Juan R.**

**Gonzalez Muñoz, Esq.** and **Carlos Vergne, Esq.**

| | |
|---|---|
| **GONZALEZ MUÑOZ LAW OFFICES, PSC**<br>P.O. Box 9024055<br>San Juan, P.R. 00902-4055<br>Tel. 787-766-5052<br>Fax 787-766-5551<br>polonorteprlaw@gmail.com<br>jrgmlaw@gmail.com<br><br>_s/ Juan Rafael Gonzalez Muñoz_<br>Juan Rafael Gonzalez Muñoz<br>USDC-PR No. 202312<br><br><br>**LAW OFFICE OF CARLOS M. VERGNE**<br>24 Mariana Bracetto St., 2nd Floor<br>San Juan, Puerto Rico 00918<br>Tel. 787-753-3799<br>Fax 787-759-8429<br>carlosvergne@aol.com.<br><br>_s/ Carlos M. Vergne Vargas_<br>Carlos M. Vergne Vargas<br>USDC-PR No. 209611 | **BAERGA & QUINTANA**<br>Counsel for Defendants<br>Union Plaza Building Suite 810<br>Ponce de Leon Avenue 416<br>San Juan, Puerto Rico 00918-3426<br>Tel. 753-7455  Fax 756-5796<br>info@bqlawoffices.com<br><br>_S/ Fernando A. Baerga-Ibáñez_<br>Fernando A. Baerga Ibáñez<br>USDC  PR  No.  213311<br>fbaerga@bqlawoffices.com<br><br>_S/ Carlos R. Ramírez_<br>Carlos R. Ramírez<br>USDC PR No. 213201<br>cramirez@bqlawoffices.com |